UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| KEENAN WILKINS, aka NERRAH BROWN, | No. 2:19-cv-1338 KJN P |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| DR. CHRISTINE S. BARBER, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302. On July 24, 2019, plaintiff filed a motion for preliminary injunction. Plaintiff's complaint has not yet been screened.

As set forth below, the undersigned requests the Supervising Deputy Attorney General to respond to plaintiff's motion.

Plaintiff's Complaint

On July 17, 2019, plaintiff filed a complaint alleging the following. Plaintiff suffers from a myriad of serious medical conditions including a disc herniation, syringomyelia, spondylosis, and alleged shoulder separation that causes him extreme pain. Plaintiff also has schizophrenia, and at times has suicidal ideations due to pain. (ECF No. 1 at 7.) For four years, plaintiff was

prescribed morphine, 30 mg, twice a day for pain management. On November 28, 2018, plaintiff was transferred to the California Health Care Facility. Plaintiff alleges that defendant Dr. Barber immediately began threatening to take plaintiff off opioids. Subsequently, a psych tech falsely reported that plaintiff was "cheeking" his medications. The next day, Dr. Barber had plaintiff sign a narcotic contract and began reducing plaintiff's morphine. One week later, the morphine was completely stopped, and plaintiff was given Tylenol that offered no pain relief. Plaintiff began having extreme pain and withdrawals; despite putting in repeated sick call slips, he was denied care and defendant Nurse Escobar told plaintiff to "drink water" for the withdrawals. Plaintiff suffered withdrawal symptoms for two weeks or more without any medical assistance. On March 6, 2019, plaintiff saw Dr. Barber, informed her of his suffering. Plaintiff told Dr. Barber that he had reported her to her superiors and submitted a Medical Board complaint. Plaintiff claims Dr. Barber became enraged, told plaintiff to "suffer" and made him leave. Dr. Barber then entered a false note claiming plaintiff was caught cheeking medication two days in a row and that was why she stopped his pain medication. Plaintiff alleges that Dr. Singh found Dr. Barber violated policy by writing such a false note. (ECF No. 1 at 5, citing ECF No. 1 at 18-19.)

On March 15, 2019, plaintiff saw an outside surgeon, who requested a current MRI of disc herniation for surgery and recommended a non-narcotic pain medication. On March 25, 2019, Dr. Barber denied the MRI and the pain medication, and discontinued plaintiff's prescription orthopedic shoes which plaintiff had for two years to help him walk with syringomyelia, etc.

On May 3, 2019, plaintiff saw an outside orthopedist for plaintiff's shoulder separation that has allegedly gone unaddressed since December 2015. The orthopedist recommended plaintiff receive a cortisone shot in his shoulder, which to date plaintiff has not received.

Despite Dr. Barber writing an allegedly false note and subjecting plaintiff to untreated pain for five months, Chief Recarey, Chief Adams, and Chief Singh all insisted plaintiff still see Dr. Barber. The Prison Law Office wrote a letter of inquiry asking why plaintiff was still required to see Dr. Barber because the staff misconduct finding should preclude an adequate doctor-patient relationship. (ECF No. 5 at 19-20.) On July 10, 2019, plaintiff saw CHCF Dr. Monsour by TV appointment. Dr. Monsour would not order an MRI or the orthopedic shoes

allegedly because Dr. Barber said plaintiff does not need surgery or shoes.

In his second claim, plaintiff contends Dr. Barber retaliated against plaintiff because plaintiff sought redress via medical grievances and complaints, by Dr. Barber telling plaintiff to "suffer," and then discontinued plaintiff's prescription orthopedic shoes, and denied plaintiff an MRI and surgery.

Plaintiff seeks injunctive relief, declaratory relief, and money damages. Specifically, plaintiff seeks an order requiring an MRI so that plaintiff can be scheduled for surgery to stop his daily pain. (ECF No. 1 at 12.)

Medical Records

Plaintiff provided a copy of a completed Physician Request for Services dated May 6, 2016, for ACDF surgery by a neurosurgeon for plaintiff's right C6 radiculopathy. Plaintiff

> [h]as R C5-6 discal herniation (confirmed by MRI) with worsening Right mono radiculopathy in the upper and lower extremity. Has not responded to conservative treatment by NSAIDS (3wk) and exercise (6Wk)/activity modification (6 wk). Has continued parethesias in the upper extremity and gait disturbance. Neurosurgery consultant has recommended anterior cervical discectomy and fusion (ACDF) surgery. Previous RFS expired.

(ECF No. 1 at 14.) Although the requested treatment was marked "routine," the doctor added: "For the purpose of retrospective review, if emergent or urgent, please justify: **Within one month**." This record suggests that plaintiff has been waiting for back surgery for over three years. However, the medical record also bears an unattributed handwritten statement: "Pt. has refused in the past." (ECF No. 1 at 14.)

Meanwhile, on November 28, 2018, Dr. Barber stated that she would refer plaintiff "to orthopedic surgery, but not order an MRI until orthopedics has assessed the patient." (ECF No. 1 at 17.) In this medical record, Dr. Barber makes no mention of an urgent referral or comment on the lengthy delay. (ECF No. 1 at 17.)

Dr. Barber also noted that a "[r]ecent x-ray only show[s] mild DJD at AC joint, no note of AC separation," and would not refer plaintiff back to the neurosurgeon for the non-surgical syringomyelia at this time. (Id.)

Plaintiff had a telemed orthopedic surgery consult on May 3, 2019, with Michael Brown,

M.D. (ECF No. 5 at 16.) Dr. Brown reviewed plaintiff's x-ray and found "no acute fracture or dislocation seen. Mild degenerative changes of the acromioclavicular joint." (Id.) Dr. Brown's assessment was "left shoulder impingement, possible rotator cuff injury," and recommended a repeat cortisone injection to plaintiff's left shoulder, and if there was no improvement following such injection, "consider MRI of the left shoulder without contrast." (Id.)

With regard to plaintiff's pain complaints, Dr. Barber claimed in her November 28, 2018 report that "Unfortunately, Ultram does work on the mu receptors just like other narcotics, and this is not an acceptable medication either," but added she was referring plaintiff to the pain committee for alternative pain medication options. (ECF No. 1 at 17.) It is unclear whether the committee has recommended a pain treatment alternative. Dr. Barber's medical record confirms that plaintiff was prescribed acetaminophen 650 mg for pain. (Id.) However, on March 15, 2019, outside neurological surgeon Dr. Rahimifar recommended that plaintiff receive the non-narcotic analgesic, Ultram, for pain. (ECF No. 1 at 16.)

Motion for Preliminary Injunction

In his verified motion, plaintiff states he was previously prescribed 30 mg of morphine for pain twice a day for four years, and orthopedic shoes to help plaintiff walk due to his serious spinal problems. Plaintiff alleges that false reports of cheeking were lodged to cancel plaintiff's opioid prescription, and his morphine prescription was subsequently reduced to zero with no medical assistance during his period of withdrawal. Then, he was prescribed Tylenol, which plaintiff claims does not help at all.

On March 15, 2019, plaintiff saw an outside neurosurgeon, Dr. Rahimifar, who requested a current MRI on plaintiff's disc herniation to schedule plaintiff's surgery, and requested plaintiff receive a non-opioid pain medication Ultram. (ECF No. 6 at 3, 22.) On March 25, 2019, Dr. Barber denied the MRI request, the non-opioid pain medication, and discontinued plaintiff's two year permanent orthopedic shoe prescription. (ECF No. 6 at 4, 24.) Despite the May 3, 2019 request that plaintiff receive a cortisone shot in his shoulder, plaintiff has not received the shot to date. (ECF No. 6 at 4.) On July 10, 2019, Dr. Monsour denied the MRI and orthopedic shoes because Dr. Barber states plaintiff does not need surgery or shoes. (Id.)

4

Plaintiff alleges that for over five months, he has been allowed to endure the unnecessary and wanton infliction of pain, and suffers excruciating pain and agony every day, is unable to sleep, and at times contemplates suicide. (ECF No. 6 at 5.) He states he has trouble walking because it shoots pain up his spine, and he has fallen twice. Despite his grievances, plaintiff has been unable to obtain relief, and complains that the recommendations of the outside specialists are not being followed. (ECF No. 6 at 6, 22, 26.) Plaintiff specifically seeks the following: relief from his daily pain; an MRI of his disc herniation as requested by the neurosurgeon, cortisone shot in his shoulder as requested by the outside specialist, and orthopedic shoes as previously and permanently prescribed.

Discussion

The court makes no findings at this time, but makes the following observations. The record reflects that plaintiff was apparently approved to have back surgery by a neurosurgeon on May 25, 2016. On November 28, 2018, Dr. Barber stated she would refer plaintiff to orthopedic surgery, but not order an MRI until orthopedics has assessed plaintiff. It is unclear why plaintiff would require further assessment in light of the prior finding that plaintiff had not responded to conservative treatment or exercise, his condition was worsening, and he had been approved for ACDF surgery over two and a half years earlier. Moreover, despite plaintiff's prior morphine prescription for a period of four years, plaintiff's morphine was reduced, terminated, and then replaced with Tylenol, which plaintiff states offers him no pain relief. The medical record confirms plaintiff was prescribed acetaminophen for pain relief, despite the specialist's recommendation that plaintiff receive Ultram (also known as Tramadol), and despite his prior history of receiving morphine for pain relief. Plaintiff provides evidence that specialists have recommended specific medical treatment that would alleviate plaintiff's pain (Ultram) and perhaps reduce (back surgery) plaintiff's need for pain medication.

In light of plaintiff's serious allegations, the court requests that by August 15, 2019, Supervising Deputy Attorney General Monica N. Anderson address plaintiff's motion for injunctive relief, including why plaintiff has not been provided an MRI so that his back surgery can be scheduled; why he has not been prescribed Ultram, as recommended by the outside

neurosurgeon, and if plaintiff cannot be prescribed Ultram, why plaintiff's doctor failed to contact the neurosurgeon to obtain an acceptable alternative pain medication; and, finally, why plaintiff's permanent prescription for orthopedic shoes was revoked. **Because of plaintiff's allegations as to Dr. Barber, as well as Dr. Singh's finding that staff violated California Department of Corrections and Rehabilitation policy (ECF No. 6 at 20) in response to plaintiff's administrative appeal objecting that he "never cheeked medication" (<u>id.</u> at 19), the undersigned requests that any response provided by medical staff or doctors at CHCF not include having this matter responded to solely by Dr. Barber.**

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of the Court is directed to serve a copy of this order, and plaintiff's motion for preliminary injunction (ECF No. 6) on Supervising Deputy Attorney General Monica N. Anderson, 1300 I Street, Suite 125, Sacramento, CA 95814; and

2. On or before August 15, 2019, Supervising Deputy General Monica N. Anderson is requested to address plaintiff's motion for injunctive relief.

Dated: July 29, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/wilk1338.pi.fb