| | |
|---|---|
| KEENAN WILKINS, aka NERRAH BROWN,<br><br>Plaintiff,<br><br>v.<br><br>DR. CHRISTINE S. BARBER, et al.,<br><br>Defendants. | No. 2:19-cv-1338 KJN P<br><br><br>ORDER |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Plaintiff is a state prisoner, proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302. On July 24, 2019, plaintiff filed a motion for preliminary injunction, and pursuant to the court's order, the state provided a response by special appearance. On October 3, 2019, plaintiff filed his reply (ECF No. 25). On October 31, 2019, plaintiff filed a motion for temporary restraining order.

As set forth below, pending service of the complaint, the undersigned requests the Supervising Deputy Attorney General provide an additional response.

Plaintiff declares that for four years he has been prescribed morphine, 30 mg. twice a day, for pain management. (ECF No. 1 at 4.)

Medical records provided by plaintiff demonstrate that plaintiff was previously approved for neck surgery based on neurosurgeon Dr. Senegor's August 4, 2015 diagnosis of right C6

radiculopathy due to discal herniation, and requested by CDCR doctor Afshin Arya, M.D. on May 6, 2016, and approved on May 13, 2016 (utilization management tracking # SAC-15/16-1011990). (ECF No. 1 at 14.) The request for services form states that plaintiff's R C5-6 discal herniation was confirmed by MRI

> with worsening Right mono radiculopathy in the upper and lower extremity. Has not responded to conservative treatment by NSAIDS (3wk) and exercise (5Wk)/activity modification(6wk). Has continued paresthesias in the upper extremity and gait disturbance. Neurosurgery consultant has recommended anterior cervical discectomy and fusion (ACDF) surgery. Previous RFS expired.

(ECF No. 1 at 14.) "Cervical radiculopathy is a syndrome of pain and/or sensorimotor deficits due to compression of a cervical nerve root. See U.S. National Library of Medicine, National Institutes of Health Cervical Radiculopathy: A Review, https://ww.ncbi.nlm.nih.gov/pmc/ articles/PMC3192889/ (last visited May 1, 2018)." Mason v. Ryan, 2018 WL 2119398, *1 n.1 (D. Ariz. May 8, 2018).

Plaintiff explained that while he was waiting for surgery at California State Prison, Sacramento, he was transferred to RJ Donovan Prison on June 24, 2016.[1] (ECF No. 10 at 2 (declaration).) While awaiting surgery post-transfer, Dr. Shakilea informed plaintiff that the proposed neck surgery may make his condition worse, and therefore prescribed alternative pain management for plaintiff's disc herniation and other medical ailments, specifically, morphine 30 mg. twice a day. (Id.)

On December 15, 2016, an MRI Cervical spine without contrast was performed, finding:

> C4-C5: Right asymmetric disc bulge results in mild central canal stenosis, moderate to severe right neural foraminal stenosis, and mild left neural foraminal narrowing.
>
> C5-C6: Right asymmetric broad-based disc protrusion and/or disc osteophyte complex effaces the ventral CSF space with mild ventral cord compression. Severe right and moderate left neural foraminal stenosis. The degree of stenosis has mildly increased.

---

[1] On August 5, 2019, plaintiff alleged the transfer was retaliatory and that his case challenging the transfer, Wilkins v. Baughman, No. 2:17-cv-1368 TLN KJN P (E.D. Cal.), was presently pending appeal. (ECF No. 10 at 2.) However, the court's docket reflects that plaintiff's appeal was dismissed as frivolous on September 18, 2019. Id. (ECF No. 24.)

(ECF No. 25 at 51.)

Subsequently, plaintiff was prescribed Tylenol in place of the morphine, despite neurosurgeon Dr. Rahimifar's March 15, 2019 recommendation that plaintiff be prescribed Ultram or Tramadol for pain relief, and despite prison doctors prescribing plaintiff morphine for the prior four years.

Following plaintiff's 2018 transfer to the California Health Care Facility in Stockton, plaintiff's prescription to morphine was tapered and discontinued based on allegations that plaintiff was caught "cheeking" the morphine. Plaintiff denies such allegations and insists that Dr. Barber falsified the records to have plaintiff's morphine discontinued. In support, plaintiff relies on his grievance CHCF SC 19000126 in which he challenged the February 17, 2019 finding that plaintiff "cheeked" his medication, and cites Dr. Singh's finding that Dr. Barber violated California Department of Corrections policy. (ECF No. 6 at 20.) On July 22, 2019, plaintiff met with Chief Physician Dr. Singh and showed him the March 15, 2019 neurologist's report and the May 3, 2019 orthopedist's report, and declares Dr. Singh "said he was unaware of these things and he would get plaintiff seen." (ECF No. 10 at 5.) On July 26, 2019, plaintiff was called to see a "pain specialist," but after one hour, the pain specialist told plaintiff that the pain specialist was told that a report is no longer needed so the appointment was cancelled. (ECF No. 10 at 5.)

Subsequently, on September 20, 2019, plaintiff asked CCI Michels to confirm that as approved by Captain Romero, the counseling RVR # 6517847 dated February 17, 2019, claiming plaintiff was caught "cheeking" had been removed from S.O.M.S, and on September 20, 2019, CCI Michels confirmed that "the counseling only chrono date[d] 02-17-19 for disobeying an order has been removed." (ECF No. 25 at 8.) On two separate occasions, plaintiff also asked Chief Medical Officer ("CMO") Adams to identify the name of the psych tech who allegedly took Dr. Barber a cup of residue on February 18, 2019, but CMO Adams directed plaintiff to review his medical records. (ECF No. 25 at 14, 15.) It is unclear whether plaintiff's medical records contain this information.[2]

---

[2] For example, in her March 25, 2019 report, Dr. Barber states that plaintiff's "narcotics were discontinued after he was caught cheeking them twice in two days." (ECF No. 6 at 24.) But in

In the state's response by special appearance, CMO Adams stated that headquarters was reviewing the policy violation finding, but that in any event, the policy violation was based on a "lack of quality documentation and not falsification," and that a final decision should be reached in October. (ECF No. 15 at 10.) It is unclear whether a decision has been reached, and it is unclear what impact, if any, the removal of the February 17, 2019 chrono or the differences in how the second alleged medication mishandling was characterized by Dr. Barber had on such decision.

Moreover, CMO Adams noted that plaintiff was receiving two non-narcotic pain medications: Tylenol and Cymbalta. (ECF No. 15 at 10.) But plaintiff states that his psychiatrist substituted Cymbalta for Zoloft to see if it would help for pain, which it did not, so plaintiff was placed back on Zoloft on August 22, 2019. (ECF No. 25 at 3.) So, at present, plaintiff continues to be prescribed Tylenol for pain, despite the specialist's recommendation that plaintiff receive Ultram for pain relief.

Finally, on March 25, 2019, Dr. Barber charted that she informed plaintiff that she was referring him to the pain committee. (ECF No. 6 at 24.) CMO Adams noted that on April 10, 2019, the RN charted that plaintiff "had an upcoming appointment with PMNR," and on April 16, 2019, "the plan was a referred [sic] to pain committee as well as PM&R." (ECF No. 15 at 7, 8.) On July 10, 2019, Dr. Mansour noted that plaintiff's medical chart "notes plaintiff was referred to pain committee." (ECF No. 25 at 37.) It is unclear what is meant by "PMNR" or "PM&R," and it is unclear whether this might refer to the subsequently cancelled appointment with the pain specialist described by plaintiff. But as of October 28, 2019, plaintiff had not yet been seen by the pain committee. (ECF No. 26 at 3.)

In reviewing the summary of plaintiff's medical records provided by CMO Adams, it appears that Dr. Barber does not believe plaintiff's complaints of pain to be credible. But Dr.

---

CMO Adams' summary, Adams recounts that on March 6, 2019, plaintiff's PCP "documented that she saw the residue in the cup on the second occasion when the psych tech came to speak with her." (ECF No. 15 at 5.) The psych tech was not identified by name in the summary provided by CMO Adams or in Dr. Barber's March 25, 2019 medical record. (ECF No. 15.) The state's response by special appearance provided only a summary of medical records rather than copies of medical records. (ECF No. 15.)

Barber does not address plaintiff's complaints that pain keeps him from sleeping at night, which is commonly known to affect one's health, and which Dr. Barber is unable to observe. Moreover, the record also reflects that plaintiff was prescribed morphine for four years at more than one prison, and that a specialist has determined that plaintiff is in need of surgery for his disc herniation, which is worsening, and that plaintiff does not respond to NSAIDs. See, e.g., Anderson v. Tate, 2014 WL 1884215, *8 (E.D. Cal. May 12, 2014) (where record reflected that doctors at two different prisons prescribed narcotics to treat Anderson's pain, and the current treating doctor's apparent failure to review all of plaintiff's relevant medical records, the court could not find that the current treating doctor's opinion constituted a mere difference of opinion).

Thus, the court is troubled that the current medical records fail to specifically address plaintiff's disc herniation and prior order for surgical intervention. Indeed, in Dr. Barber's March 25, 2019 medical record, she charts that although Dr. Rahimifar noted plaintiff should return to neurosurgery for the C5-6 disc herniation, because plaintiff was referred for the syringomyelia, which is non-surgical, plaintiff would not be referred back to neurosurgery. (ECF No. 6 at 24.) Further, plaintiff would not be provided an MRI until after orthopedics had assessed plaintiff. (Id.) However, the orthopedic referral was for plaintiff's shoulder injury, leaving plaintiff's disc herniation issue unresolved. Similarly, Dr. Mansour also failed to address plaintiff's disc herniation, despite plaintiff's complaints of neck and shoulder pain, as well as the notation in plaintiff's medical history that he suffers from chronic neck pain. (ECF No. 25 at 36.) Dr. Mansour merely noted plaintiff had been referred to the pain committee regarding pain control. (ECF No. 25 at 37.)

Although CMO Adams contends that a conservative approach is warranted in connection with plaintiff's herniated disc,[3] the medical records demonstrate that a conservative approach was implemented back in 2015, failed, and surgery was ordered, then a prison doctor persuaded plaintiff to follow a pain management regimen rather than surgery, and prescribed morphine, 30

---

[3] In the August 5, 2019 summary, CMO Adams also notes that plaintiff received an x-ray of his "lumbar spine" which was "without any acute abnormalities." (ECF No. 15 at 10.) But plaintiff's disc herniation in his neck is confirmed by the December 15, 2016 MRI of his cervical spine. (ECF No. 25 at 51.)

5

mg. twice a day, which plaintiff received for four years from more than one prison doctor. "Prison officials cannot avoid Eighth Amendment liability by simply declaring that they disagree with a specialist's or treating doctor's prescribed course of care." Miller v. California Department of Corrections and Rehabilitation, 2018 WL 534306 (N.D. Cal. Jan. 24, 2018). A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Now, whether or not the medicine abuse allegations are true, plaintiff alleges that he suffers pain unresolved by mere Tylenol. The medical records showing a disc bulge and severe spinal stenosis in plaintiff's C5-C6 cervical spine support plaintiff's complaints of neck pain, whether or not he exhibits such pain every time he is seen by Dr. Barber.

Finally, as to plaintiff's shoulder, on May 3, 2019, Dr. Brown reviewed plaintiff's x-ray and noted "there is no acute fracture or dislocation seen. Mild degenerative changes of the acromioclavicular joint," and assessed plaintiff has a "left shoulder impingement, possible rotator cuff injury." (ECF No. 16 at 16.) Dr. Brown recommended plaintiff have a repeat cortisone injection since it gave relief in the past, but if no improvement, "consider MRI of the left shoulder without contrast." (Id.) But plaintiff received the cortisone shot on July 25, 2019, and declares it provided no pain relief. (ECF No. 26 at 3.)

Thus, plaintiff claims he suffers pain related to his shoulder injury, as well as his disc herniation, and that Tylenol offers no relief.

Before issuing this order, the undersigned makes an additional observation. The court is aware that plaintiff has previously been found to have sustained three strikes under 28 U.S.C. § 1915(g), and therefore may be seeking to avoid another such finding by claiming imminent harm (indeed, plaintiff pleads imminent danger: health at risk daily due to denial of MRI for surgery, daily extreme pain/impairment, mental anguish and missed mental health groups). On the other hand, the court is concerned that the defendants may be ignoring plaintiff's complaints of pain because he has previously been refused access to the courts under 28 U.S.C. § 1915(g).

6

Denial of medical treatment "may result in a pending imminent danger of serious physical injury within the meaning of 28 U.S.C. § 1915(g)." Freeman v. Collins, 2011 WL 1397594, *5-6 (S.D. Ohio Apr. 12, 2011) (noting the Sixth Circuit recently found the denial of medical treatment can satisfy the imminent danger requirement, citing numerous other Courts of Appeals cases finding the same), adopted, 2011 WL 6339687 (S.D. Ohio Dec. 19, 2011). The undersigned is aware of cases holding that inadequate treatment for pain fails to demonstrate imminent danger under § 1915(g),[4] but finds the instant case is distinguishable on its facts.

In light of plaintiff's subsequent filings, and CMO Adams' statement that headquarters was reviewing Dr. Barber's alleged violation of policy and would possibly render a decision in October, the undersigned requests an additional response addressing:

1. Whether headquarters has rendered a decision on its review of the alleged policy violation by Dr. Barber and, if so, what decision was rendered;[5]

2. The impact, if any, of the removal of the February 17, 2019 chrono from plaintiff's records;

3. Whether plaintiff has been seen by the pain committee and if not, why not;

4. Whether plaintiff should be rescheduled for neck surgery in light of Dr. Barber's refusal to prescribe effective pain medication; and

5. Whether or not this record supports a finding that plaintiff should be assigned to a primary care provider other than Dr. Barber.

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of the Court is directed to serve a copy of this order, and plaintiff's motion for temporary restraining order (ECF No. 26) on Supervising Deputy Attorney General Monica N. Anderson, 1300 I Street, Suite 125, Sacramento, CA 95814; and

////

////

---

[4] See, e.g., Stewart v. Lystad, 2016 WL 6816278 (W.D. Wash. Oct. 14, 2016) (prisoner did not sufficiently allege she faced an imminent danger) (collecting cases).

[5] If appropriate, counsel may seek to have the decision filed under seal.

7

2. On or before November 20, 2019, Supervising Deputy General Monica N. Anderson is requested to respond to this order, as set forth above.

Dated: November 7, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/wilk1338.tro.fb