| | |
|---|---|
| KEENAN WILKINS, aka NERRAH BROWN, | No. 2:19-cv-1338 KJN P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| DR. CHRISTINE S. BARBER, et al., | |
| Defendants. | |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Plaintiff is a state prisoner, proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302. On July 24, 2019, plaintiff filed a motion for preliminary injunction, and pursuant to the court's order, the state provided a response by special appearance (ECF No. 15). On October 3, 2019, plaintiff filed his reply (ECF No. 25). On October 31, 2019, plaintiff filed a motion for temporary restraining order, and the state provided a response by special appearance (ECF No. 32). As discussed below, the undersigned recommends that plaintiff's motions be denied.

I. Plaintiff's Complaint

On July 17, 2019, plaintiff filed a complaint alleging the following. Plaintiff suffers from a myriad of serious medical conditions including a disc herniation, syringomyelia, spondylosis, and alleged shoulder separation that causes him extreme pain. Plaintiff also has schizophrenia,

and at times has suicidal ideations due to pain. (ECF No. 1 at 7.) For four years, plaintiff was prescribed morphine, 30 mg, twice a day for pain management. On November 28, 2018, plaintiff was transferred to the California Health Care Facility ("CHCF"). Plaintiff alleges that defendant Dr. Barber immediately began threatening to take plaintiff off opioids. Subsequently, a psych tech falsely reported that plaintiff was "cheeking" his medications. The next day, Dr. Barber had plaintiff sign a narcotic contract and began reducing plaintiff's morphine. One week later, the morphine was completely stopped, and plaintiff was given Tylenol that offered no pain relief. Plaintiff began having extreme pain and withdrawals. Despite putting in repeated sick call slips, he was denied care and defendant Nurse Escobar told plaintiff to "drink water" for the withdrawals. Plaintiff suffered withdrawal symptoms for two weeks or more without any medical assistance. On March 6, 2019, plaintiff saw Dr. Barber, and informed her of his suffering. Plaintiff told Dr. Barber that he had reported her to her superiors and submitted a Medical Board complaint. Plaintiff claims Dr. Barber became enraged, told plaintiff to "suffer" and made him leave. Dr. Barber then entered a false note claiming plaintiff was caught cheeking medication two days in a row and that was why she stopped his pain medication. Plaintiff alleges that Dr. Singh found Dr. Barber violated policy by writing such a false note. (ECF No. 1 at 5, citing ECF No. 1 at 18-19.)

On March 15, 2019, plaintiff saw an outside surgeon, who requested a current MRI of disc herniation for surgery and recommended a non-narcotic pain medication. On March 25, 2019, Dr. Barber denied the MRI and the pain medication, and discontinued plaintiff's prescription orthopedic shoes which plaintiff had for two years to help him walk with syringomyelia, etc.

On May 3, 2019, plaintiff saw an outside orthopedist for plaintiff's shoulder separation that has allegedly gone unaddressed since December 2015. The orthopedist recommended plaintiff receive a cortisone shot in his shoulder, which to date plaintiff has not received.

Plaintiff further alleges that Chief Recarey, Chief Adams, and Chief Singh insisted plaintiff still see Dr. Barber. On July 10, 2019, plaintiff saw CHCF Dr. Monsour by TV appointment. Dr. Monsour would not order an MRI or the orthopedic shoes because Dr. Barber allegedly said plaintiff does not need surgery or shoes.

In his second claim, plaintiff contends Dr. Barber retaliated against plaintiff because plaintiff sought redress via medical grievances and complaints by Dr. Barber telling plaintiff to "suffer," and then discontinued plaintiff's prescription orthopedic shoes, and denied plaintiff an MRI and surgery.

Plaintiff seeks injunctive relief, declaratory relief, and money damages. Specifically, plaintiff seeks an order requiring an MRI so that plaintiff can be scheduled for surgery to stop his daily pain. (ECF No. 1 at 12.)

II. Plaintiff's Motion for Preliminary Injunction

In his verified motion, plaintiff states he was previously prescribed 30 mg of morphine for pain twice a day for four years, and orthopedic shoes to help plaintiff walk due to his serious spinal problems. Plaintiff alleges that false reports of cheeking were lodged to cancel plaintiff's opioid prescription, and his morphine prescription was subsequently reduced to zero with no medical assistance during his period of withdrawal. Then, he was prescribed Tylenol, which plaintiff claims does not help at all.

On March 15, 2019, plaintiff saw an outside neurosurgeon, Dr. Rahimifar, who requested a current MRI on plaintiff's disc herniation to schedule plaintiff's surgery, and requested plaintiff receive a non-opioid pain medication Ultram. (ECF No. 6 at 3, 22.) On March 25, 2019, Dr. Barber denied the MRI request, the non-opioid pain medication, and discontinued plaintiff's two-year permanent orthopedic shoe prescription. (ECF No. 6 at 4, 24.) As of the date of his motion, plaintiff had not received the cortisone shot in his shoulder requested on May 3, 2019. (ECF No. 6 at 4.) On July 10, 2019, Dr. Mansour denied the MRI and orthopedic shoes because Dr. Barber states plaintiff does not need surgery or shoes. (Id.)

Plaintiff alleges that for over five months, he has been allowed to endure the unnecessary and wanton infliction of pain, and suffers excruciating pain and agony every day, is unable to sleep, and at times contemplates suicide. (ECF No. 6 at 5.) He states he has trouble walking because it shoots pain up his spine, and he has fallen twice. Despite his grievances, plaintiff has been unable to obtain relief, and complains that the recommendations of the outside specialists are not being followed. (ECF No. 6 at 6, 22, 26.) Plaintiff specifically seeks the following: relief

3

from his daily pain; an MRI of his disc herniation as requested by the neurosurgeon, cortisone shot in his shoulder as requested by the outside specialist, and orthopedic shoes as previously and permanently prescribed.

III. Plaintiff's Motion for Temporary Restraining Order

Plaintiff repeats many of his allegations from his original pleading, and complains that he is still being required to see Dr. Barber. Plaintiff confirms that he received a cortisone shot in his shoulder on July 25, 2019, but alleges it provided no relief. Plaintiff has not received the MRI that the specialist allegedly requested if the shot did not work. (ECF No. 26 at 3.) Plaintiff "seek[s] a temporary restraining order from seeing Dr. Barber pending this action and medical board investigation." (Id.)

IV. Responses by Special Appearance

Pursuant to the undersigned's requests, the Office of the Attorney General provided two responses to plaintiff's motions by special appearance. (ECF Nos. 15, 32.)

V. Motion for Injunctive Relief

A. Applicable Law

A temporary restraining order may issue upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of such an order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 439 (1974). In ruling on a motion for temporary restraining order, district courts apply the same factors used to evaluate a request for preliminary injunctive relief: whether plaintiff "is likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, . . . the balance of equities tips in his favor, and . . . an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); see Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) ("Because our analysis is substantially identical for the injunction and the TRO, we do not address the TRO separately.").

////

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24 (citation omitted).

Federal courts are courts of limited jurisdiction and in considering a request for preliminary injunctive relief, the court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. City of L.A. v. Lyons, 461 U.S. 95, 102 (1983); Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982). If the court does not have an actual case or controversy before it, it has no power to hear the matter in question. Id. Further, requests for prospective relief are limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ("PLRA"), which requires that the court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."

Finally, the pendency of an action does not give the court jurisdiction over prison officials in general. Summers v. Earth Island Inst., 555 U.S. 488, 491-93 (2009); Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010). The court's jurisdiction is limited to the parties in this action and to the viable legal claims upon which this action is proceeding. Summers, 555 U.S. at 491-93; Mayfield, 599 F.3d at 969.

B. Discussion

Federal Rule 65(b)(1) permits issuance of a temporary restraining order without notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Id. Plaintiff has not provided the certification required by this rule. Accordingly, the request for a temporary injunction is defective and should be denied.

In addition, plaintiff filed his motions before the complaint was screened, and no defendant has been served with process. Until defendants have been served with process, this

5

court lacks personal jurisdiction over them, and may not grant the injunctive relief he seeks. See Fed. R. Civ. P. 65(d)(2); see Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend.").

Review of the record as a whole confirms that plaintiff has a disagreement with the medical treatment provided,[1] and that on myriad occasions, plaintiff has refused medical treatment. In one appeal, plaintiff states "I will never see this doctor," referring to defendant Dr. Barber. (ECF No. 25 at 64.) While it appears plaintiff now wishes to pursue neck surgery, he concedes that a prior doctor warned plaintiff that the proposed neck surgery could make his condition worse. Such finding supports Chief Medical Executive ("CME") Adams' position that a conservative approach is warranted in connection with plaintiff's herniated disc. (ECF No. 15 at 11.) "Neck surgery is a high risk procedure," and "[s]pinal surgery should be used to improve function, not solely for pain control and there is no reason in this case to obtain a pre-surgical test (MRI) if surgery is not being considered." (Id.) "[I]f [plaintiff] is able to function in a normal prison setting the risks of the procedure probably outweigh the benefits." (Id.)

CME Adams reviewed plaintiff's medical records and confirmed that plaintiff's mental health clinician regularly checks on plaintiff, who denied he was suicidal on myriad occasions.

---

[1] As for plaintiff's complaints of extreme pain, the medical records provide conflicting information as to the level of plaintiff's pain: plaintiff was seen walking without a limp, was able to get on and off the exam table without difficulty, one doctor noted plaintiff was in "no visible physical distress," and building officers where plaintiff lives told the doctor plaintiff did not complain of pain or show obvious discomfort, and a doctor charted that "she watched [plaintiff] ambulate and move and he does not show that he is unable to function, complete his ADLs [activities of daily living]." (ECF No. 16 at 6.) A nurse noted that plaintiff's pain complaints were not consistent with nursing protocols. (ECF No. 15 at 7.) Another medical record noted that plaintiff was "able to move his neck from side to side, did not appear to have severe neck pain, was able to get up and walked out of the clinic with a steady gait and his neck held high, shoulders a normal body alignment, no evidence of any limp or evidence of any pain," and on another occasion was noted having a "steady gait without acute distress." (Id.) In his reply to the first response by special appearance, plaintiff provided copies of health care request forms seeking treatment for his pain complaints. (ECF No. 25 at 17, 34, 38, 40, 44, 45-49, 55, 56.) Sometimes, plaintiff complained of daily pain, other times he claimed he was in pain "at times." (Id., *passim*.)

6

(ECF No. 15 at 4-11.)

In addition, it appears that plaintiff has been assigned to a different primary care provider, Dr. A. Dredar, so plaintiff is no longer required to be seen by defendant Dr. Barber. (ECF No. 32 at 3.) In light of such reassignment, it is unclear why plaintiff continues to refuse to be seen, and his refusal to be seen precludes an updated medical assessment (ECF No. 32 at 2), and tends to negate his claim that he is suffering extreme pain. Indeed, plaintiff filed no response to the November 19, 2019 declaration filed by special appearance (ECF No. 32). Also, in connection with the cheeking allegations, the response by special appearance confirmed that the reviewing authority determined that plaintiff's administrative grievance did not meet staff complaint criteria and "failed to identify misconduct even if [plaintiff's] allegations were assumed to be true." (ECF No. 32 at 2.) "[N]o adverse action was taken against Dr. Barber." (Id.) Finally, plaintiff confirmed that the February 17, 2019 chrono was removed from his records, which was also confirmed in the response by special appearance. (ECF No. 32 at 2.)

Thus, at this juncture, the undersigned cannot find that plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, and is unable to ascertain at this time whether plaintiff is likely to succeed on the merits of his claims.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case; and

Further, IT IS RECOMMENDED that:

1. Plaintiff's motion for injunctive relief (ECF No. 6) be denied without prejudice; and
2. Plaintiff's motion for temporary restraining order (ECF No. 26) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file

////

////

7

objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 4, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/wilk1338.tro.pi