UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEENAN WILKINS, aka NERRAH BROWN,<br><br>Plaintiff,<br><br>v.<br><br>DR. CHRISTINE S. BARBER, et al.,<br><br>Defendants. | No. 2:19-cv-1338 WBS KJN P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner, proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302. On July 24, 2019, plaintiff filed a motion for preliminary injunction, and pursuant to the court's order, the state provided a response by special appearance (ECF No. 15). On October 3, 2019, plaintiff filed his reply (ECF No. 25). On October 31, 2019, plaintiff filed a motion for temporary restraining order, and the state provided a response by special appearance (ECF No. 32). On December 4, 2019, the undersigned issued findings and recommendations. However, plaintiff subsequently informed the court that his reply had not been received by the court, and therefore sought reconsideration. Good cause appearing, the December 4, 2019 findings and recommendations are vacated.

In the meantime, plaintiff filed a second motion for temporary restraining order on December 26, 2019.

As discussed below, the undersigned recommends that plaintiff's motions be denied without prejudice.

I. Plaintiff's Complaint

On July 17, 2019, plaintiff filed a complaint alleging the following. Plaintiff suffers from a myriad of serious medical conditions including a disc herniation, syringomyelia, spondylosis, and alleged shoulder separation that causes him extreme pain. Plaintiff also has schizophrenia, and at times has suicidal ideations due to pain. (ECF No. 1 at 7.) For four years, plaintiff was prescribed morphine, 30 mg, twice a day for pain management. On November 28, 2018, plaintiff was transferred to the California Health Care Facility ("CHCF"). Plaintiff alleges that defendant Dr. Barber immediately began threatening to take plaintiff off opioids. Subsequently, a psych tech falsely reported that plaintiff was "cheeking" his medications. The next day, Dr. Barber had plaintiff sign a narcotic contract and began reducing plaintiff's morphine. One week later, the morphine was completely stopped, and plaintiff was given Tylenol that offered no pain relief. Plaintiff began having extreme pain and withdrawals. Despite putting in repeated sick call slips, he was denied care and defendant Nurse Escobar told plaintiff to "drink water" for the withdrawals. Plaintiff suffered withdrawal symptoms for two weeks or more without any medical assistance. On March 6, 2019, plaintiff saw Dr. Barber, and informed her of his suffering. Plaintiff told Dr. Barber that he had reported her to her superiors and submitted a Medical Board complaint. Plaintiff claims Dr. Barber became enraged, told plaintiff to "suffer" and made him leave. Dr. Barber then entered a false note claiming plaintiff was caught cheeking medication two days in a row and that was why she stopped his pain medication. Plaintiff alleges that Dr. Singh found Dr. Barber violated policy by writing such a false note. (ECF No. 1 at 5, citing ECF No. 1 at 18-19.)

On March 15, 2019, plaintiff saw an outside surgeon, who requested a current MRI of disc herniation for surgery and recommended a non-narcotic pain medication. On March 25, 2019, Dr. Barber denied the MRI and the pain medication, and discontinued plaintiff's prescription for orthopedic shoes which plaintiff had for two years to help him walk with syringomyelia, etc.

////

2

On May 3, 2019, plaintiff saw an outside orthopedist for plaintiff's shoulder separation that has allegedly gone unaddressed since December 2015. The orthopedist recommended plaintiff receive a cortisone shot in his shoulder, which to date plaintiff has not received.

Plaintiff further alleges that Chief Recarey, Chief Adams, and Chief Singh insisted plaintiff still see Dr. Barber. On July 10, 2019, plaintiff saw CHCF Dr. Monsour by TV appointment. Dr. Monsour would not order an MRI or the orthopedic shoes because Dr. Barber allegedly said plaintiff does not need surgery or shoes.

In his second claim, plaintiff contends Dr. Barber retaliated against plaintiff because plaintiff sought redress via medical grievances and complaints by Dr. Barber telling plaintiff to "suffer," and then discontinued plaintiff's prescription orthopedic shoes, and denied plaintiff an MRI and surgery.

Plaintiff seeks injunctive relief, declaratory relief, and money damages. Specifically, plaintiff seeks an order requiring an MRI so that plaintiff can be scheduled for surgery to stop his daily pain. (ECF No. 1 at 12.)

## II. Plaintiff's Motion for Preliminary Injunction

In his verified motion, plaintiff states he was previously prescribed 30 mg of morphine for pain twice a day for four years, and orthopedic shoes to help plaintiff walk due to his serious spinal problems. Plaintiff alleges that false reports of cheeking were lodged to cancel plaintiff's opioid prescription, and his morphine prescription was subsequently reduced to zero with no medical assistance during his period of withdrawal. Then, he was prescribed Tylenol, which plaintiff claims does not help at all.

On March 15, 2019, plaintiff saw an outside neurosurgeon, Dr. Rahimifar, who requested a current MRI on plaintiff's disc herniation to schedule plaintiff's surgery, and requested plaintiff receive a non-opioid pain medication Ultram. (ECF No. 6 at 3, 22.) On March 25, 2019, Dr. Barber denied the MRI request, the non-opioid pain medication, and discontinued plaintiff's two-year permanent orthopedic shoe prescription. (ECF No. 6 at 4, 24.) As of the date of his motion, plaintiff had not received the cortisone shot in his shoulder requested on May 3, 2019. (ECF No.
////

6 at 4.) On July 10, 2019, Dr. Mansour denied the MRI and orthopedic shoes because Dr. Barber states plaintiff does not need surgery or shoes. (Id.)

Plaintiff alleges that for over five months, he has been allowed to endure the unnecessary and wanton infliction of pain, and suffers excruciating pain and agony every day, is unable to sleep, and at times contemplates suicide. (ECF No. 6 at 5.) He states he has trouble walking because it shoots pain up his spine, and he has fallen twice. Despite his grievances, plaintiff has been unable to obtain relief, and complains that the recommendations of the outside specialists are not being followed. (ECF No. 6 at 6, 22, 26.) Plaintiff specifically seeks the following: relief from his daily pain; an MRI of his disc herniation as requested by the neurosurgeon, cortisone shot in his shoulder as requested by the outside specialist, and orthopedic shoes as previously and permanently prescribed.

III. Plaintiff's Motion for Temporary Restraining Order

Plaintiff repeats many of his allegations from his original pleading, and complains that he is still being required to see Dr. Barber. Plaintiff confirms that he received a cortisone shot in his shoulder on July 25, 2019, but alleges it provided no relief. Plaintiff has not received the MRI that the specialist allegedly requested if the shot did not work. (ECF No. 26 at 3.) Plaintiff "seek[s] a temporary restraining order from seeing Dr. Barber pending this action and medical board investigation." (Id.)

IV. Plaintiff's Second Motion for Temporary Restraining Order

Plaintiff contends that he is in serious pain every day, "no exercise; little sleep." (ECF No. 47 at 1.) On December 11, 2019, plaintiff's legs became numb, and pain shot through his spine, causing him to fall and suffer a lump on his head. Plaintiff is still receiving over the counter Tylenol, also known as Acetaminophen, 1300 mg daily, which he has taken for nine months without pain relief. Plaintiff contends that Acetaminophen should not be prescribed for longer than seven to ten days because high doses can result in kidney or liver damage if taken over long periods. Plaintiff has been deprived of the pain management committee review since March of 2019, and denied a step by step approach to pain management as required under the pain management guidelines. Plaintiff seeks a court order restraining defendants from prescribing

Tylenol, denying plaintiff the step by step approach to pain management, and denying plaintiff review by the pain management committee.

V. Responses by Special Appearance

Pursuant to the undersigned's requests, the Office of the Attorney General provided two responses to plaintiff's motions by special appearance. (ECF Nos. 15, 32.) In the first response, Chief Medical Executive ("CME") Adams set forth all of the medical treatment provided to plaintiff at CHCF between November 28, 2018, and August 7, 2019. (ECF No. 15 at 4-10.) CME Adams noted that plaintiff's morphine was tapered off, not stopped cold turkey, and that the form 7362 documented plaintiff's withdrawal symptoms, but also noted plaintiff refused to be seen for the evaluation and treatment of his symptoms. (ECF No. 15 at 10.) CME Adams also noted that plaintiff was getting two non-narcotic pain medications, Cymbalta and Tylenol, for his pain, and the specialist agrees that a non-narcotic should be used for plaintiff's pain control. (Id.) In any event, CME Adams stated that "[p]ain relief is not the goal when treating chronic pain, it is treating the pain to the point where the patient is able to perform his ADLs (activities of daily living) and remain functional in a normal prison setting." (Id.) CME Adams added that plaintiff did not meet the criteria for orthopedic shoes, and that his request for MRI was deferred until surgery was being considered. (ECF No. 15 at 11.) CME Adams opined that "[s]pinal surgery should be used to improve function, not solely for pain control," and that it was "reasonable to treat the shoulder first with conservative therapy in a step-by-step fashion, prior to cutting into a patient's neck." (Id.) Plaintiff received his cortisone shot on July 25, 2019, and his mental health clinician confirmed that plaintiff is checked on regularly and he has not claimed to be suicidal. (Id.) Finally, CME Adams noted that plaintiff has been seen by two different primary care physicians who both feel surgery is not medically indicated at this time. (ECF No. 15 at 11.)

On November 19, 2019, the second response by special appearance confirmed that plaintiff's administrative complaint "did not meet staff complaint criteria and failed to identify misconduct even if his allegations were assumed to be true." (ECF No. 32 at 2.) No adverse action was taken against Dr. Barber as a result. In any event, the removal of the February 17, 2019 chrono from plaintiff's records "would have no effect on his medical care or custody

decisions." (ECF No. 32 at 2.) The Deputy Attorney General noted that plaintiff had not yet been seen by the pain committee, but that "[p]laintiff has refused multiple visits to see the physician over the past several months, and due to these refusals, there has not been an updated assessment, completion of referral paperwork, or discussion regarding referrals or updates in the treatment plan with plaintiff." (ECF No. 32 at 2.) In light of such refusals, "medical staff cannot determine whether plaintiff should be rescheduled for neck surgery without evaluating him." (Id.) Finally, plaintiff is no longer assigned to Dr. Barber, but was assigned to a different primary care provider, Dr. A. Dredar. (Id.)

VI. Motions for Injunctive Relief

    A. Applicable Law

A temporary restraining order may issue upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of such an order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 439 (1974). In ruling on a motion for temporary restraining order, district courts apply the same factors used to evaluate a request for preliminary injunctive relief: whether plaintiff "is likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, . . . the balance of equities tips in his favor, and . . . an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); see Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) ("Because our analysis is substantially identical for the injunction and the TRO, we do not address the TRO separately.").

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24 (citation omitted).

Federal courts are courts of limited jurisdiction and in considering a request for preliminary injunctive relief, the court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. City of L.A. v. Lyons, 461 U.S. 95, 102 (1983); Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S.

464, 471 (1982). If the court does not have an actual case or controversy before it, it has no power to hear the matter in question. Id. Further, requests for prospective relief are limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ("PLRA"), which requires that the court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."

Finally, the pendency of an action does not give the court jurisdiction over prison officials in general. Summers v. Earth Island Inst., 555 U.S. 488, 491-93 (2009); Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010). The court's jurisdiction is limited to the parties in this action and to the viable legal claims upon which this action is proceeding. Summers, 555 U.S. at 491-93; Mayfield, 599 F.3d at 969.

B. Discussion

Plaintiff filed two of his motions before the complaint was screened, and no defendant had yet been served with process. Until defendants have been served with process, this court lacks personal jurisdiction over them, and may not grant the injunctive relief he seeks. See Fed. R. Civ. P. 65(d)(2); see Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend.").

In his request for reconsideration, plaintiff now claims that in addition to Dr. Barber, who allegedly committed various criminal and fraudulent actions against him, plaintiff has been seen by Dr. Mansour, Dr. Niccoledge, and Dr. Dredar, who all "fail to afford adequate care and who all also falsify evaluations they never did," and argues the June 12, 2019 grievance response was falsely changed after this action was brought. (ECF No. 43 at 3.)

Since plaintiff filed this action, he has received the requested steroid shot to his shoulder, received an assignment to a different doctor, and was given an MRI in December of 2019. The record reflects that plaintiff has been seen by multiple physicians, received neurosurgical consults and has been seen by mental health clinicians. Thus, even assuming, arguendo, that plaintiff has

7

shown that he is likely to suffer harm in the absence of injunctive relief because his chronic pain is not adequately treated with 1300 mg of Acetaminophen every day, plaintiff cannot at this time establish that he is likely to succeed on the merits of his claim.

The standards governing plaintiff's Eighth Amendment claims are as follows. Inadequate medical care does not constitute cruel and unusual punishment cognizable under §1983 unless the mistreatment rose to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong -- defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations and quotations omitted).

To establish deliberate indifference, a plaintiff must show that defendants knew of and disregarded an excessive risk to his health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inferences." Id. The nature of a defendant's responses must be such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997). Deliberate indifference may occur when prison officials deny, delay, or intentionally interfere with medical treatment, or may be demonstrated by the way in which prison officials provide medical care. McGuckin, 974 F.2d at 1059-60.

However, a showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation. Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124,

1130 (9th Cir. 1998). A mere difference of opinion concerning the appropriate treatment cannot be the basis for an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Instead, an inmate must allege facts sufficient to indicate a culpable state of mind on the part of prison officials. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). Accordingly, a difference of opinion about the proper course of treatment is not deliberate indifference and a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment does not amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Here, while the court determined that the complaint is appropriate for service on defendants, no defendant has yet responded to the complaint. No discovery has been conducted or evidence presented to the court. Plaintiff disputes the responses submitted by the office of the Attorney General by special appearance, but the responses suggest that plaintiff has a difference of opinion with the medical care he is receiving at CHCF. See, e.g., Joseph v. Hawkins, 2015 WL 2455718, at *3 (E.D. Cal. May 22, 2015) ("To the extent plaintiff contends that defendants should have provided plaintiff with additional pain medication or taken further steps to involve themselves with the PMC [Pain Management Committee], such contentions represent a mere difference of opinion."). Thus, while plaintiff has a possibility of succeeding on the merits of his claims should he be able to demonstrate a defendant's deliberate indifference, the undersigned cannot find that plaintiff is likely to succeed on the merits of his claims at this stage of the proceedings.

Because plaintiff cannot at this time make each of the showings required under Winter, injunctive relief is not appropriate.

VII. Conclusion

Accordingly, IT IS HEREBY ORDERED that the findings and recommendations (ECF No. 42) are vacated; and

////

////

9

Further, IT IS RECOMMENDED that:

1. Plaintiff's motion for injunctive relief (ECF No. 6) be denied without prejudice; and
2. Plaintiff's motions for temporary restraining order (ECF Nos. 26, 47) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 23, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/wilk1338.tro2.pi