UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEENAN WILKINS, aka NERRAH BROWN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DR. CHRISTINE S. BARBER, et al.,<br><br>　　　　Defendants. | No.  2:19-cv-1338 WBS KJN P<br><br>ORDER |

Plaintiff, a state prisoner, proceeds pro se and in forma pauperis with this civil rights action seeking relief under 42 U.S.C. § 1983.  This order addresses in turn plaintiff's motion to extend discovery, defendant Barber's request that plaintiff be admonished, and plaintiff's motions for sanctions.

I.  Plaintiff's Motion to Extend Discovery

　　Background

　　On April 7, 2020, the court first issued its discovery and scheduling order.  (ECF No. 71.)  In response to plaintiff's objections, the scheduling order was vacated.  (ECF No. 85.)

　　Plaintiff filed his second amended complaint on June 8, 2020.  (ECF No. 49.)

////

1

On September 29, 2020, another discovery and scheduling order issued. (ECF No. 124.) On November 30, 2020, plaintiff sought an extension of the discovery deadline. (ECF No. 131.) On January 14, 2021, plaintiff's request was granted, and the discovery deadline was extended to April 23, 2021. (ECF No. 139.) On Aril 27, 2021, plaintiff again requested an extension of the discovery deadline. (ECF No. 156.)

On May 7, 2021, the discovery deadline was extended for the sole purpose of resolving discovery disputes for discovery requests propounded on or before April 23, 2021, and permitted the parties to file motions to compel until June 24, 2021. (ECF No. 158.)

On June 16, 2021, plaintiff filed his third motion to extend discovery. (ECF No. 164.)

On June 24, 2021, plaintiff filed a motion for summary judgment. (ECF No. 166.)

Governing Standards

"The district court is given broad discretion in supervising the pretrial phase of litigation." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607 (9th Cir. 1992) (citation and internal quotation marks omitted). Rule 16(b) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

Discussion

Plaintiff filed a document styled, "Plaintiff's Request for Expansion of Discovery Order Pursuant to Order Dated 5-7-21." (ECF No. 164.) As noted above, the May 7, 2021 order extended discovery for a limited purpose. In his request, plaintiff seeks to extend discovery for an unidentified period of time based solely on a letter dated June 4, 2021, from counsel for defendant Dr. Barber. Plaintiff argues that despite defendant Barber declaring that Psych Tech N. Thai brought defendant Barber a cup of plaintiff's morphine residue, defendant Barber's counsel now claims that N. Thai did not get the cup of residue by giving plaintiff his medication, but rather got it from another source. (ECF No. 164 at 2, citing ECF No. 164 at 7.)

In June 4, 2021 letter, counsel for defendant Barber wrote:

> You also claim that it was impossible for the Psych Tech to bring Dr. Barber the medication residue because N. Thai did not provide you the medication. In her March 6, 2019, outpatient progress note, Dr. Barber does not state that N. Thai gave you the medication. That is a false assumption on your part. Dr. Barber states "I saw the residue,

> which was significant, in the cup on the second occasion when the Psych Tech came to speak with me." Dr. Barber does not state the circumstances surrounding how this Psych Tech came into possession of that medication residue.

(ECF No. 164 at 7.) Plaintiff now asks defendants to "fully disclose the who, what, where, and why of this (alleged fabricated) incident (where did N. Thai get this alleged cup of residue of plaintiff's, etc.)." (ECF No. 164 at 2-3.) Plaintiff continues:

> he seeks the discovery to support the lie after lie after lie after lie and criminal acts (18 U.S.C. § 1519, etc.) told by the defense and defendants. If not a lie/falsification it should be able to easily be produced. "Where did N. Thai ever get a cup of his morphine residue to take to Barber as declared."

(ECF No. 164 at 5.)

Initially, the court observes that defense counsel did not state that N. Thai did not get the cup of residue by giving plaintiff his medication, but got it from another source. Rather, defense counsel merely pointed out that in the March 6, 2019 progress note, Dr. Barber did not address where N. Thai obtained the cup of residue.

The record reflects that on August 19, 2019, plaintiff wrote a letter stating that Psych Tech Bridget Ashaolu was the psych tech working second and third shifts on February 18, 2019, and later provided a copy of medical records showing that Bridget Ashaolu was the psych tech administering medications on February 18, 2019. (ECF No. 18 at 5 (letter appended to plaintiff's declaration); ECF No. 23 at 14-15 (medical records).) Thus, whether it was Psych Tech Le or Thai who allegedly delivered the cup with morphine residue to defendant Dr. Barber on February 18, 2019, plaintiff was on notice by August 2019 that it was not Psych Tech Ashaolo who provided the cup to defendant Barber, and plaintiff could have earlier propounded discovery seeking to know how the psych tech came in possession of the cup delivered to defendant Barber. Also, in defendant Barber's response to plaintiff's special interrogatory No. 1, served on November 25, 2020, defendant Barber identified N. Thai as the psych tech who brought the residue in the cup. (ECF No. 169 at 6.) Thus, the extended deadline of April 23, 2021, provided plaintiff with additional time to pursue any further discovery.

Moreover, in his reply, plaintiff "concedes expansion is perhaps unnecessary now. The

1  latest misconduct in this proceeding demonstrates that the sought after discovery does not exist."
2  (ECF No. 173 at 10.)  Indeed, defendant Dr. Barber declares that she does not know who
3  administered plaintiff his medication on February 18, 2019.  (ECF No. 169 at 5.)  Further, in the
4  confidential inquiry report dated September 20, 2019, defendant Dr. Singh, the interviewer, wrote
5  that during his September 19, 2019 interview with N. Thai, "Thai stated when a patient is
6  suspected of diverting medication she always informed the provider and custody staff, so
7  appropriate action is taken, when needed.  She also stated she does not document when patients
8  divert medications and does not recall this specific incident."  (ECF No. 164 at 11.)

9        The record reflects that plaintiff has had additional time to propound discovery, has
10 propounded multiple sets of discovery, and has now filed his motion for summary judgment.
11 Therefore, the undersigned does not find good cause to further extend the discovery deadline.

12 II.  <u>Defendant Barber's Request for Admonition</u>

13       In her opposition to plaintiff's motion to expand the discovery deadline, counsel for
14 defendant Barber provided copies of plaintiff's letters with complaints against defendant Barber
15 and defense counsel to the California Health Care Facility, California State Bar, and the United
16 States Department of Justice, letters from plaintiff to defense counsel, and four emails received
17 from plaintiff's friends and family members, purportedly dictated by plaintiff.  (ECF No. 169 at
18 10-79.)  As an example, counsel points to plaintiff's comments in his June 10, 2021 letter:

19  
20        You have now added additional <u>Lies</u> to Barber's fantasy - Lies that
         can clearly be substantiated.  It baffles me how you are willing to risk
21       not only your license [sic] but also your freedom with <u>Clear Criminal</u>
         <u>Conspiracy</u>.
22       . . . .
23       Its [sic] time to advise your client and the court of what you now
         <u>KNOW</u> to be false -- or endure what's coming as recourse.

24 (ECF No. 169 at 69, 72.)

25       On April 12, 2021, defense counsel wrote plaintiff to object to his duplicative discovery
26 requests.  (ECF No. 169 at 81-82.)  On May 20, 2021, defense counsel wrote to plaintiff in
27 response to his May 9 and 10, 2021 letters threatening defense counsel "with complaints you
28 claimed to have filed with the U.S. Department of Justice, California State Bar and Division of

Investigations Health Quality Investigative Unit," in which plaintiff "allege[d] frivolous and meritless claims that [defense counsel] has conspired to commit criminal actions by preparing 'knowingly false documents.'" (ECF No. 169 at 89.) Defense counsel asked plaintiff to "cease and desist" his "harassing and threatening actions, and demanded that they be withdrawn. (Id.) On June 4, 2021, defense counsel demanded plaintiff retract his request for judicial notice (ECF No. 162) in which he alleged misconduct by defendant Barber and her counsel, and again demanded that plaintiff "cease and desist" his "harassing and threatening conduct purportedly based upon your unmeritorious and false claims," and immediately withdraw such claims made to other entities. (ECF No. 169 at 85.)

Defendant Barber objects that plaintiff has embarked on a campaign of harassment, threats and false allegations against Dr. Barber and her counsel, and argues that his scheme is to attempt to harass and intimidate in an effort to get what he wants. (ECF No. 169 at 6-7.) Defendant Barber asks the court to admonish plaintiff for his improper conduct, and "direct him to cease making allegations of criminal conduct, filing false claims with governmental agencies and this court, sending harassing, threatening correspondence to counsel, and engaging in frivolous, voluminous filings in this court," and caution him that his continued course of conduct will result in defendant filing a motion for terminating sanctions. (ECF No. 169 at 8.)

In his reply, plaintiff again repeats that defendant Barber's declaration is perjured and claims the chrono provided is "fraudulent" to deceive the court, and attacks the validity of the chrono, alleging "defense counsel . . . and defendant Barber's new and latest criminal/fraudulent acts in this action." (ECF No. 173 at 3, 5, 7.) He claims to set forth evidence of Fraud/Crime (18 U.S.C. § 1519). (ECF No. 173 at 4.) Plaintiff states that he "can only hope the court would take the action against defense counsel and defendant Barber that it would take against [plaintiff] if he were to attempt to mislead the court, commit perjury, manufacture evidence, etc. as they have." (ECF No. 173 at 10.)

Discussion

Upon review of the myriad documents plaintiff submitted to defense counsel, as well as other entities and the court, the undersigned finds that the request for admonition is well-taken.

Plaintiff has consistently threatened defendant Barber and her attorney, referred to defendant Barber as a "criminal," and inundated counsel with harassing, threatening and intimidating letters and emails.  Plaintiff must stop.

The instant record amply demonstrates that plaintiff does not believe defendant Barber, or believe that Psych Tech N. Thai delivered to defendant Barber a cup of plaintiff's morphine residue on February 18, 2019.  However, in this civil action, plaintiff must challenge defendant Barber's declaration with evidence of his own, through proper motions or oppositions to motions, and, at trial, attempt to demonstrate defendant Barber's alleged lack of credibility through cross-examination and reference to the evidence.[1]  Not by threats and harassment.  Not by name-calling.  The court views plaintiff's threatening letters to counsel, other entities, and the court as an attempt to badger defendant into changing her declaration, which is improper conduct and an abuse of the judicial process.  Calling defendant Barber and her attorney names is inappropriate and unacceptable.

Therefore, plaintiff is admonished that he must immediately refrain from making allegations of criminal conduct, filing baseless claims with other entities and this court, sending harassing and threatening correspondence to counsel, and engaging in frivolous filings in this court.  Plaintiff is put on notice of the following standards governing the putative imposition of sanctions, including terminating sanctions, that plaintiff will be subject to if he fails to abide by this order.

Standards Governing Imposition of Sanctions

District courts retain broad discretion to control their dockets and "[i]n the exercise of that power they may impose sanctions, including where appropriate, default or dismissal." Adams v. California Dep't of Health Servs., 487 F.3d 684, 688 (9th Cir. 2007) (brackets in original) (quoting Thompson v. Hous. Auth. of City of Los Angeles, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam)).  District courts have broad discretion in imposing discovery sanctions. See Anheuser–Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995) (upholding

---

[1] Indeed, it is the jury who determines the credibility of both plaintiff and defendants.

6

1  dismissal where party engaged in deceptive practices that undermined the integrity of the
2  proceedings).
3       Additional sources of authority exist to sanction litigants or their attorneys for improper
4  conduct:  (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the
5  court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and
6  vexatiously multiplies the proceedings, and (3) the court's inherent power.  Fink v. Gomez, 239
7  F.3d 989, 991 (9th Cir. 2001).  Under such inherent power, district courts are empowered to
8  sanction parties for abuses outside the courtroom.  Chambers v. NASCO, Inc., 501 U.S. 32, 57
9  (1991) (finding Chambers' actions were "part of [a] sordid scheme of deliberate misuse of the
10 judicial process" designed "to defeat NASCO's claim by harassment, repeated and endless delay,
11 mountainous expense and waste of financial resources," and affirming attorney fee award.)
12      District courts have broad discretion in fashioning sanctions.  Ritchie v. United States, 451
13 F.3d 1019, 1026 (9th Cir. 2006).  Such broad discretion includes the power to dismiss an action
14 when a party has . . . engaged in conduct utterly inconsistent with the orderly administration of
15 justice."  Anheuser-Busch, Inc., 69 F.3d at 348.
16      Additionally, Local Rule 110 provides that "[f]ailure . . . of a party to comply . . . with any
17 order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within
18 the inherent power of the Court."  Id.
19      Plaintiff is warned that if he continues the improper conduct addressed herein, the court
20 will entertain a motion for the imposition of sanctions, including a motion to impose terminating
21 sanctions as to his claims against defendant Barber, based on such failure to comply with this
22 court order.
23 III.  Plaintiff's June 21, 2021 Motion for Sanctions
24      Plaintiff seeks sanctions under Rule 11 of the Federal Rules of Civil Procedure, or such
25 other sanctions as are available under the court's inherent power, and references defendant
26 Barber's alleged criminal acts under 18 U.S.C. § 1519.  (ECF No. 165 at 1.)
27      "Rule 11 requires the imposition of sanctions when a motion is frivolous, legally
28 unreasonable, or without factual foundation, or is brought for an improper purpose."  Conn v.

1  Borjorquez, 967 F.2d 1418, 1420 (9th Cir. 1992), citing Operating Engineers Pension Trust v. A-
2  C Company, 859 F.2d 1336, 1344 (9th Cir. 1988).  "The standard for determining the propriety of
3  Rule 11 sanctions is one of objective reasonableness for determinations of frivolousness as well
4  as of improper purpose."  Conn, 967 F.2d at 1420.

5       Federal courts also have the inherent authority to sanction conduct abusive of the judicial
6  process.  See Chambers, 501 U.S. at 43-45.  In other words, the court has the inherent power to
7  sanction a party who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."
8  Chambers, 501 U.S. at 45-46.

9       Here, as argued by defendant Barber, motions for sanctions are not the proper mechanism
10  in which to litigate the merits of a case.  In this motion, plaintiff claims that "defendants
11  conspired to and did in fact commit acts in violation of 18 U.S.C. § 1518 -- to tamper with
12  evidence, create false witnesses, commit fraud upon the court, present falsified documents, etc. --
13  and other misconduct."  (ECF No. 165 at 2.)  Plaintiff accuses defendant Barber's counsel of
14  preparing a fraudulent declaration, and argues that misconduct by an officer of the court is
15  considered fraud on the court.  (ECF No. 165 at 8, 10.)  But plaintiff's motion is again based on
16  his belief that defendant Barber allegedly lied and falsified evidence, and then continues to argue
17  the merits of plaintiff's claims, citing to evidence he claims demonstrates defendant Barber's
18  evidence is false.

19       Discovery responses are expressly exempt from Rule 11.  "Inapplicability to Discovery.
20  This rule does not apply to disclosures and discovery requests, responses, objections, and motions
21  under Rules 26 through 37."  Fed. R. Civ. P. 11.  Inasmuch as plaintiff points to no court filing
22  that is sanctionable under Rule 11, his motion is denied.  (See, e.g., ECF No. 171 at 4-5 (listing
23  documents plaintiff relief on in seeking sanctions).)

24       Plaintiff's motion for sanctions under this court's inherent authority is also without merit.
25  The undersigned finds no basis to order sanctions against defendant Barber.
26  ////
27  ////
28  ////

      Finally, plaintiff's reliance on federal criminal cases (ECF No. 165 at 9-10) and 18 U.S.C. § 1519[2] are equally unavailing. As plaintiff was previously advised (ECF No. 85 at 3), "[a] private right of action under a criminal statute has rarely been implied." See Chrysler Corp. v. Brown, 441 U.S. 281, 316 (1979). The court has reviewed § 1519 and finds no indication that civil enforcement of any kind is available to plaintiff. Chrysler Corp., 441 U.S. at 316 (quoting Cort v. Ash, 422 U.S. 66, 79 (1975) (Where a private right of action has been implied, "'there was at least a statutory basis for interring that a civil cause of action of some sort lay in favor of someone.'")

IV. Plaintiff's August 25, 2021 Motion for Sanctions

      Plaintiff now seeks sanctions against counsel for defendants Singh, Adams, Mansour, Recarey, Dredar, and Gates, based on the opposition to plaintiff's motion for summary judgment, again claiming that defendant Barber's declaration is false.[3] As set forth above, a motion for sanctions is not the proper mechanism to dispute the merits of plaintiff's claims. Rather, it is incumbent upon plaintiff to challenge defendants' evidence by producing his own evidence. If he believes a particular defendant or witness is not credible, he may attack credibility at trial, by cross-examination of a particular witness.

      The court finds no basis to sanction counsel or defendants Singh, Adams, Mansour, Recarey, Dredar, and Gates. Plaintiff's motion is denied.

////

////

---

[2] "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both." 18 U.S.C. § 1519.

[3] Indeed, "a court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). "In ruling on a motion for summary judgment, the court must leave credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts to the jury." Foster v. Metropolitan Life Ins. Co., 243 F. App'x 208, 210 (9th Cir. 2007) (internal quotations and citation omitted).

V. Further Admonition

Plaintiff's motions for sanctions are legally frivolous. Because plaintiff proceeds pro se, the court declines to impose sanctions at this time. However, plaintiff is cautioned that the continued filing of frivolous motions may result in the imposition of sanctions. See Newman & Cahn, LLP v. Sharp, 388 F. Supp. 2d 115, 119 (E.D. N.Y. 2005) (declining to order sanctions against party "because she [was] pro se," though warning her "that the filing of another frivolous paper with the Court may result in monetary sanctions under Rule 11"). Plaintiff is advised that meritless motions may result in the imposition of sanctions, including dismissal of this action, or an award of costs under the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 11(c), 16(f), 26(g), and 37.

VI. Orders and Recommendations

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to extend the discovery deadline (ECF No. 164) is denied.

2. Defendant Barber's request to admonish plaintiff (ECF No. 169) is granted; plaintiff is warned to take heed of the standards governing sanctionable conduct set forth in detail above, and cautioned that his failure to refrain from the harassing, threatening, improper conduct at issue herein may result in the termination of his claims against Dr. Barber.

3. Plaintiff's motion for sanctions (ECF No. 165) is denied.

4. Plaintiff's motion for sanctions (ECF No. 183) is denied.

5. Plaintiff is warned that further frivolous filings may result in sanctions, up to and including dismissal of this action, or an award of costs.

Dated: September 7, 2021

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/wilk1338.41r.dn